UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMMANUEL SHAWN COATES,

        Plaintiff,                  Case No. 1:17-cv-1064

v.                                     Hon. Robert J. Jonker

RICHARD SNYDER and
KRISTIE ETUE,

        Defendants.
_____/

### REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 against defendants Richard Snyder and Kristie Etue.  This matter is now before the Court on defendants' motion to dismiss (ECF No. 15).

**I.**    **Plaintiff's complaint**

Plaintiff has filed a complaint for declaratory and injunctive relief against Michigan Governor Richard Snyder and (former) Michigan State Police Director Kriste Etue.  Plaintiff is a convicted sex offender.  The gist of plaintiff's claim is that he is not bound by requirements of Michigan's Sex Offender Registration Act ("SORA"), which was enacted after his conviction. Plaintiff set forth the following allegations (in his words):

> 10. On August 5, 1985, Plaintiff was sentenced to a prison term of 9 to 15 years after pleading guilty to Third Degree Criminal Sexual Conduct. MCL 750.520d. Berrien County Circuit Court Docket No. 85-536-FC-H.
>
> 11. At the time of Plaintiff's conviction and sentence, SORA was not in existence. SORA was enacted in 1994 and became law on October l, 1995. See 1994 Mich. Pub. Act. 295.

1

12. Plaintiff was on parole when SORA became law, and pursuant to the requirements of the act, Plaintiff's parole agent registered him. See 1994 Mich. Pub. Act. 295, §4(2)(d).

13. The 1994 act, established a confidential database containing Information about Michigan sex offenders and was only available to law enforcement agencies.

14. Since the statute's 1994 enactment, it has been amended numerous times and applied retroactively. See 1996 Mich. Pub. Act. 494; 1999 Mich. Pub. Act. 85; 2002 Mich. App. Act. 542; 2004 Mich. Pub. Act. 235, 239, 240; 2005 Mich. Pub. Act. 121, 127, 132; 2006 Mic. Pub. Act. 46; 2011 Mich. Pub. Act. 17, 18, and 2013 Mich. Pub. Act. 149.

15. It is the 1994 act which took effect on October 1, 1995 that governs this action for Declaratory and Injunctive relief.

16. In 2004, the amendment to SORA created a public accessible website that published detailed personal Information about Plaintiff. The [sic] in 2006, SORA was amended again to include geographic exclusion zones. Prohibiting Plaintiff from working, living, or even "loitering" within 1,000 feet of a school. Plaintiff's crime did not involve minors.

17. In 2011 SORA was once again amended and applied retroactively to Plaintiff. The amendment classified registrants into three Tiers, which determine the frequency of reporting and length of registration. Based solely upon the registrant's offense and without any individual risk assessment. Plaintiff has been classified as Tier Three registrant. Plaintiff's length of registration requirement was extended from ten (10) years to lifetime. Where before under the 1994 law, Plaintiff only had to register for a period of ten (10) years if he was incarcerated. Plaintiff violated parole in 1995, and was sentence to a prison term of 17 to 50 years after his guilty plea to assault with intent to murder. Undoubtedly, Plaintiff was incarcerated for the 10 year period required by 1994 Mich. Pub. Act. 295. The Michigan Department of Corrections registered Plaintiff for well over 10 years before his release on parole on March 28, 2017.

18. Plaintiff's registration requirement under the 1994 act, expired in 2004 or no later than 2005.

19. Under the amendments to SORA, Plaintiff is required to register quarterly and pay a $50.00 registration fee each time he register. Plaintiff's next registration date is December 2017. When under the 1994 act, Plaintiff was only required to register one time and pay a one time $50.00 registration fee.

20. Plaintiff's Parole Agent James Plukas has informed him that regardless of the United States Supreme Court ruling, he still must comply with the registration act

or be subject to parole revocation and that Plaintiff must continue to wear a GPS tether while on parole status.

Compl. (ECF No. 1, PageID.3-4).

Plaintiff seeks various forms of relief including:

a. Adjudge and decree that Defendants, by the systems, policies, practices, and conditions described above, have violated and continue to violated the Ex Post Facto Clause of the United States Constitution;

b. Preliminary and permanently enjoin the Defendants from requiring Plaintiff to register under the amendments to the Michigan Sex Offender Act, which occurred after 1994;

c. Preliminary and permanently enjoin the Defendant from placing Plaintiff on the register since under the 1994 Act, Plaintiff's period of registering expired after ten (10) years while he was incarcerated;

d. Preliminary and permanently enjoin the Michigan Department of Corrections, Parole Board, and Parole Agent from requiring Plaintiff wear a GPS tether the remaining period of his 24 month parole.

e. Preliminary and permanently enjoin the Michigan Department of Corrections, Parole Board, and Parole Agent from requiring Plaintiff to continue to register under a law that was deemed unlawful by the Court.

*Id*. at PageID.4-5.

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983. Here, plaintiff has alleged that the enforcement of the 2004 and 2011 SORA amendments against him violates the Ex Post Facto Clause of the United States Constitution. He seeks to enjoin defendants from requiring him to

3

register under the amendments to SORA which occurred after 1994, noting that under the 1994 Act, his period of registering expired after 10 years. In addition, plaintiff seeks to enjoin non-party MDOC, the Michigan Parole Board, and his parole agent from wearing a GPS tether the remaining period of his parole and from requiring him to register under SORA.

## II. Defendants' motion to dismiss

### A. Legal Standard

Defendants have moved to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, while *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004).

### B. Discussion

#### 1. Relief against non-parties

The only defendants in this lawsuit are Michigan's governor and former director of the state police. Plaintiff does not name the MDOC, the Michigan Parole Board, or his parole agents as parties to this lawsuit. "It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) (citation omitted). Accordingly, plaintiff's claims against these non-parties should be dismissed.

### 2. Statute of limitations

Defendants contend that plaintiff's claims are barred by the three-year statute of limitations applicable to § 1983 actions, because his lawsuit contests compliance with SORA provisions which became effective long before December 1, 2017, the date plaintiff filed this action. *See Chippewa Trading Company v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004) (the statute of limitations for a § 1983 claim in Michigan is three years, based upon Michigan's three-year statute of limitations for injury to a person or property, M.C.L. § 600.5805(10)"). Defendants cite portions of the rule set forth in *Kuhnle Brothers, Inc. v County of Geauga*, 103 F.3d 516 (6th Cir. 1997) which reads in its entirety:

> The date on which the statute of limitations begins to run in a § 1983 action is a question of federal law. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Ordinarily, the limitations period starts to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id*. at 273. "In determining when the cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991) (citing *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir. 1989)).

*Kuhnle Brothers, Inc.*, 103 F.3d at 520.

While defendants contend that plaintiff's claims are barred by the statute of limitations, they do not identify any event which "should have alerted the typical lay person" like

plaintiff "to protect his or her rights." *Id*.  Defendants provide minimal background to support their statute of limitations claim: that in 1985 plaintiff was convicted of third-degree criminal sexual conduct; that he was on parole in 1995 when SORA was enacted; that while on parole plaintiff pled guilty to assault with intent to commit murder and sentenced to another prison term; that in 2017 plaintiff was released on parole; and, that plaintiff claims that his parole agent is requiring him to wear a GPS tether while on parole.  Defendants' Brief (ECF No. 16, PageID.41). Then, defendants provide a vague and conclusory argument:

> Here, the basis for Plaintiff's lawsuit is his required compliance with certain provisions of the SORA that became effective much longer than three years prior to the filing of his complaint. Logically, Plaintiff's claims accrued when these provisions first applied to him.

*Id.* at PageID.46.  Without providing any further discussion of the alleged facts in this case, defendants also contend that the statute of limitations bar "is not overcome by the 'continuing violations' savings doctrine." *Id*.  Defendants' conclusory argument does not address the facts of this case, in which plaintiff challenges the retroactive application of state statutes in violation of the Constitution's Ex Post Facto clause.  *See* discussion, *infra*.  As the Sixth Circuit noted in *Kuhnle Brothers, Inc.*:

> A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment. The continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations.

*Kuhnle Brothers, Inc.*, 103 F.3d at 522 (internal quotation marks and brackets omitted). Defendants have failed to meet their burden to establish that plaintiff's claims are barred by the statute of limitations.  Accordingly, this ground for dismissal should be denied.

    **3.**    **Lack of a controversy**

Defendants contend that there is no actual controversy because:

> Plaintiff has not been charged with any crime, nor is enforcement of the challenged amendments of SORA likely to occur given the Sixth Circuit decision in *Does v. Snyder*. Law enforcement has been informed of the *Does v. Snyder* decision, and has been instructed to contact their prosecutors before taking any action, and prosecutors have been advised not to initiate any prosecutions. (Exhibits A and B). Indeed, the Sixth Circuit's decision has not been stayed, and so any legal effect of that opinion is already in effect and requires no further action from this Court.

Defendants' Brief at PageID.47.

In *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), the Sixth Circuit provided a succinct summary SORA's legislative history and held that it violated the Ex Post Facto clause of the Constitution when applied retroactively to sex offenders:

> Like many states, Michigan has amended its Sex Offender Registration Act (SORA) on a number of occasions in recent years for the professed purpose of making Michigan communities safer and aiding law enforcement in the task of bringing recidivists to justice. Thus, what began in 1994 as a non-public registry maintained solely for law enforcement use, *see* Mich. Pub. Act 295, §10 (1994), has grown into a byzantine code governing in minute detail the lives of the state's sex offenders, *see* Mich. Comp. Laws § 28.723, *et seq*. Over the first decade or so of SORA's existence, most of the changes centered on the role played by the registry itself. In 1999, for example, the legislature added the requirement that sex offenders register in person (either quarterly or annually, depending on the offense) and made the registry available online, providing the public with a list of all registered sex offenders' names, addresses, biometric data, and, since 2004, photographs. *See* Mich. Pub. Act. 85 §§ 5a(4), 8(2), 10(2)(3) (1999); Mich. Pub. Acts 237, 238 (2004). Michigan began taking a more aggressive tack in 2006, however, when it amended SORA to prohibit registrants (with a few exceptions, *see* Mich. Comp. Laws § 28.734-36) from living, working, or "loitering" within 1,000 feet of a school. *See* Mich. Pub. Acts 121, 127 (2005). In 2011, the legislature added the requirement that registrants be divided into three tiers, which ostensibly correlate to current dangerousness, but which are based, not on individual assessments, but solely on the crime of conviction. *See* Mich. Pub. Acts 17, 18 (2011). The 2011 amendments also require all registrants to appear in person "immediately" to update information such as new vehicles or "internet identifiers" (*e.g.*, a new email account). *See id*. The 2006 and 2011 amendments apply retroactively to all who were required to register under SORA. *See* Mich. Pub. Act 46 (2006); Mich. Pub. Acts 17, 18 (2011). Violations carry heavy criminal penalties. *See* Mich. Comp. Laws § 28.729.

> The Plaintiffs in this case — identified here only as five "John Does" and one "Mary Doe"— are registered "Tier III" sex offenders currently residing in Michigan. It is undisputed on appeal that SORA's 2006 and 2011 amendments

7

apply to them retroactively. That law has had a significant impact on each of them that reaches far beyond the stigma of simply being identified as a sex offender on a public registry. As a result of the school zone restrictions, for example, many of the Plaintiffs have had trouble finding a home in which they can legally live or a job where they can legally work. These restrictions have also kept those Plaintiffs who have children (or grandchildren) from watching them participate in school plays or on school sports teams, and they have kept Plaintiffs from visiting public playgrounds with their children for fear of "loitering." Plaintiffs are also subject to the frequent inconvenience of reporting to law enforcement in person whenever they change residences, change employment, enroll (or un-enroll) as a student, change their name, register a new email address or other "internet identifier," wish to travel for more than seven days, or buy or begin to use a vehicle (or cease to own or use a vehicle).  *See* Mich. Comp. Laws §§ 28.722(g), 725(1).

* * *

We conclude that Michigan's SORA imposes punishment. And while many (certainly not all) sex offenses involve abominable, almost unspeakable, conduct that deserves severe legal penalties, punishment may never be retroactively imposed or increased. Indeed, the fact that sex offenders are so widely feared and disdained by the general public implicates the core counter-majoritarian principle embodied in the Ex Post Facto clause. As the founders rightly perceived, as dangerous as it may be not to punish someone, it is far more dangerous to permit the government under guise of civil regulation to punish people without prior notice. Such lawmaking has "been, in all ages, [a] favorite and most formidable instrument[ ] of tyranny." *The Federalist No. 84*, *supra* at 444 (Alexander Hamilton).  It is, as Justice Chase argued, incompatible with both the words of the Constitution and the underlying first principles of "our free republican governments."  *Calder*, 3 U.S. at 388–89; *accord The Federalist No. 44*, *supra* at 232 (James Madison) ("[E]x post facto laws ... are contrary to the first principles of the social compact, and to every principle of sound legislation."). The retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and it must therefore cease.

*Does #1-5*, 834 F.3d at 696 at 697-98.

Defendants have presented a copy of a memorandum from the State of Michigan Prosecuting Attorneys Coordinating Council (PACC)[1] which mentions, among other things that

---

[1] As one court explained:

"Created in 1972 'as an autonomous entity in the department of attorney general,' M.C.L. § 49.103(1), PACC is charged with 'keep[ing] the prosecuting attorneys and assistant prosecuting attorneys of the state informed of all changes in legislation, law and matters pertaining to their office, to the end that a uniform system of conduct, duty and procedure is established in each county of the state.' § 49.109." *Zdebski v. Schmucker*, 972 F. Supp. 2d 972, 977 (E.D.

"[w]hile the 6th Circuit decision relative to the Michigan SORA is not binding on Michigan courts, it raises concern regarding application of the 2006 and 2011 amendments to registered individuals whose criminal acts occurred prior to those amendments" and that "Enforcement of the SORA amendments retroactively in light of *Does v Snyder* should be made with care and independent examination of the scope of the Opinion and law." PACC Memorandum (ECF No. 16-2, PageID.56) (footnote omitted). The memorandum also states that "Prosecutions for violations of these specific sections could potentially proceed without immunity from Federal 1983 actions, if those prosecutions are subsequently found to be unconstitutional." *Id*. at PageID.57. Defendants have also filed a memorandum from the Michigan State Police, Sex Offender Registry Unit, stating in part that "**Enforcement of any of the 2006 or 2011 requirements retroactively against any offender could subject the individual officers and law enforcement agencies to possible civil penalties.**" Michigan State Police document (ECF No. 16-3, PageID.59) (emphasis in original).

Defendants contend that there is no controversy because plaintiff is not being prosecuted for failing to comply with the SORA requirements added in 2006 and 2011. Defendants' contention inaccurately characterizes plaintiff's claims. Plaintiff does not allege that he is being prosecuted for violating SORA. Rather, plaintiff claims that state officials and employees are enforcing the 2006 and 2011 SORA amendments as part of his parole, i.e., that he is being forced to comply with the statutory registration requirements in violation of the Ex Post Facto clause.

In this instance, a controversy exists as to whether plaintiff must comply with the requirements of the 2006 and 2011 amendments. It appears from the complaint that if plaintiff failed to comply with all of the SORA requirements, he would face both a parole violation and

---

Mich. 2013). "[T]hough PACC may accept funds to defray costs, M.C.L. § 49.111, it receives funding appropriations from the Michigan Legislature as part of the Attorney General's budget." *Id*.

criminal prosecution. While defendants contend that there is no controversy, they present only cursory and conclusory arguments. Citing no authority, defendants reject plaintiff's argument that his registration should have already ended, stating that "[e]ven if Plaintiff was not in prison at the time SORA was originally enacted, he would have been required to register for 25 years from the date he first registered." Defendants' Brief at PageID.45. Defendants' position that "[p]laintiff is still required to register" supports plaintiff's claim that he would face criminal prosecution if he did not comply with the SORA Amendments. Under Michigan law, the failure to register under SORA can result in a fine of up to $10,000.00 and up to 10 years imprisonment. *See* M.C.L. § 28.729. Where "compliance is coerced by the threat of enforcement," as in this case, "the controversy is both immediate and real." *Lake Carriers' Association v. MacMullan*, 406 U.S. 498, 508 (1972). *See Roe v. Snyder*, 240 F. Supp. 3d 697, 701-11 (E.D. Mich. 2017) (where plaintiff committed a sex crime in 2003, the court determined that she had standing to raise claims regarding the unconstitutional application of the SORA Amendments from 2006 and 2011, and that those claims were ripe and not moot).

Defendants cite the PACC and Michigan State Police memoranda for the proposition that there is no controversy stating that:

> Plaintiff has not been charged with any crime, nor is enforcement of the challenged amendments of SORA likely to occur given the Sixth Circuit decision in *Does v. Snyder*. Law enforcement has been informed of the *Does v. Snyder* decision, and has been instructed to contact their prosecutors before taking any action, and prosecutors have been advised not to initiate any prosecutions.

Defendants' Brief at PageID.47. Defendants' contention that there is no controversy because enforcement of the challenged amendments is not "likely to occur" is utter nonsense. As an initial matter, the PACC memorandum upon which defendants rely is not binding on anyone. As one court noted, the "PACC does 'not have the right to exercise any portion of the sovereign power of

10

the state.' [M.C.L.] § 49.105." *Zdebski v. Schmucker*, 972 F. Supp. 2d 972, 984 (E.D. Mich. 2013). Next, the PACC's advice does not render plaintiff's claim moot. While some prosecutors may choose to follow the PACC's advice "not to initiate any prosecutions," nothing prevents a prosecutor from ignoring that advice. *See Roe*, 240 F. Supp. 3d at 711 ("a mere disclaimer of an intention to prosecute does not moot a case"). Finally, defendants' contention appears disingenuous, given that the PACC memorandum takes the position that the Sixth Circuit's opinion in *Does # 1-5* is not binding on Michigan Courts and that prosecutors are free to charge individuals such as plaintiff provided that they proceed "with care and independent examination of the scope of the Opinion and law." Memorandum at PageID.56. Accordingly, defendants' motion should be denied on this ground.

    **4.**    **Injunctive relief**

    Finally, defendants contend that plaintiff is not entitled to injunctive relief. In reviewing requests for injunctive relief, the Court considers (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the preliminary injunction will cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See Rock & Roll Hall of Fame v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998). Defendants do not address the issue of injunctive relief in a meaningful manner; they simply list the factors to be considered in issuing injunctive relief and state that "Plaintiff has no reasonable likelihood of any conduct by Defendants that would require declaratory and injunctive relief" and that "[p]laintiff is still required to register with the SOR and any contrary relief would be improper." Defendants' Brief at PageID.49. Defendants have failed meet their burden to

dismiss plaintiff's request for injunctive relief under Fed. R. Civ. P. 12(b)(6). Accordingly, defendants' motion should be denied.

### III.   RECOMMENDATION

For these reasons, I respectfully recommend that defendants' motion to dismiss (ECF No. 15) be **GRANTED** with respect to plaintiff's claim for relief against non-parties MDOC, the Michigan Parole Board, and his parole agent, and **DENIED** in all other respects.


Dated:  June 12, 2018                                    /s/ Ray Kent
                                                         United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).